## AMERICAN PRESIDENT LINES, Limited, v. FEDERAL MARITIME BOARD et al.

### Civ. No. 13.

United States District Court
District of Columbia.

May 21, 1953.

Warner W. Gardner and Alfred L. Scanlan, Washington, D. C., for plaintiff.

Warren E. Burger, Asst. Atty. Gen., Leo A. Rover, U. S. Atty., and Edward H. Hickey, Atty., Dept. of Justice, Washington, D. C., for defendants Federal Maritime Board and its members.

Arthur M. Becker, Washington, D. C., for defendant Pacific Transport Lines, Inc.

Odell Kominers and Henry G. Fischer, Washington, D. C., for defendant Pacific Far East Line, Inc.

HOLTZOFF, District Judge.

This case came on for hearing on cross-motions made by the plaintiff and each of the defendants for summary judgment.

This action is brought for a declaratory judgment and an injunction setting aside the grant of a subsidy made by the Federal Maritime Board to two steamship lines. Pursuant to authority granted by the Merchant Marine Act, § 601(a) et seq., U.S. Code, Annotated, Title 46, § 1171 et seq., the Federal Maritime Board granted what are called operating-differential subsidies to the defendants Pacific Far East Line, Inc., and the Pacific Transport Lines, Inc., which operate merchant vessels on a route between the West Coast and Oriental ports. The plaintiff, American President Lines, which for some time has been operating ships over the same route and is in receipt of a similar subvention, brings this action for an adjudication that the subsidies granted to its competitors have been illegally allowed.

The statute authorizes the Maritime Commission, later succeeded by the Federal Maritime Board, to grant financial aid for the operation of vessels to be used in essential service in the foreign commerce of the

348

United States. If the Board approves an application for such assistance, it may enter into a contract with the applicant for the payment of an operating-differential subsidy. The statute enumerates certain requirements as prerequisites to the allowance of a subsidy, and prescribes the procedure to be followed in connection with passing on applications for such aid.

There are two preliminary questions to be determined in this litigation: first, whether the action of the Board is subject to judicial review, and, if so, to what extent; and if this question is answered in the affirmative, then second, whether the plaintiff has a standing to bring this action.

■ The plaintiff seeks to predicate its right to a judicial review on the Administrative Procedure Act, U.S.Code Annotated, Title 5, § 1009. This Act excludes from its provisions matters in respect to which statutes preclude judicial review, or in respect to which agency action is by law committed to agency discretion. In this instance, no statute precludes judicial review. On the other hand, the granting or withholding of a subsidy is clearly committed by law to agency discretion. In this respect the action of the Board in granting or withholding a subsidy is similar to the action of other Federal agencies in making or withholding loans and grants. It is not mandatory for the Board to grant a subsidy merely because the applicant complies with specified conditions. It must consider and weigh many aspects of public policy and expediency in reaching a conclusion. A steamship line that petitioned for a subsidy would hardly have any right to secure judicial review of a denial of its application in the exercise of the discretion of the Board. The conclusion necessarily follows that since the action of the Board in passing on an application for a subsidy depends on its discretion, the decision of the Board will not be reviewed by the judicial branch of the Government. The courts may not substitute themselves for the Board in determining whether it is in the interest of public policy to grant or withhold a subsidy to a particular steamship line. To that extent the decision of the Board is not subject to judicial review,

as being within the ambit of matters committed to agency discretion.

The statute, however, provides certain limitations and prescribes specific procedure to be followed in connection with applications for subsidies. To the extent of determining whether any of these restrictions have been transcended, and only to that extent, judicial review is permissible. In other words, the courts may determine whether the Board has acted illegally. Beyond that the courts have no function to perform in respect to the subsidies.

■ The second preliminary question is whether the plaintiff has a standing to bring this suit. It is axiomatic that the judicial process extends only to actual cases and controversies. The courts may not pass upon the legality of official action merely because some one desires a judicial opinion on the subject. A member of the public, who has no other interest in the matter than that of any other citizen or taxpayer, has no standing to secure an injunction against official action on the ground that it may be illegal, Com. of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. The fact that a person is a competitor of a party receiving a loan or grant from the Government does not give him a standing to challenge the legality of such action, Alabama Power Co. v. Ickes, 302 U.S. 464, 478, 58 S.Ct. 300, 82 L.Ed. 374, et seq. These well established doctrines are not in dispute.

■ It is claimed by the plaintiff, however, that the Administrative Procedure Act gives it a standing to sue, which otherwise it might not have. The pertinent provision of that Act, U.S.Code, Annotated Title 5, § 1009(a), reads as follows:

"(a) Any person suffering legal wrong because of any agency action *or adversely affected or aggrieved by such action* within the meaning of any relevant statute, shall be entitled to judicial review thereof." (Emphasis supplied.)

Obviously the plaintiff has not suffered any legal wrong and, therefore, cannot bring itself within the first clause of the foregoing paragraph.

The question then arises whether the plaintiff is within the terms of the second clause, as being "adversely affected or aggrieved". If the words, "adversely affected or aggrieved" mean adversely affected or aggrieved in a legal sense, the plaintiff would have no standing to maintain this action. If however, the words just quoted were so interpreted, they would add nothing to the phrase found in the preceding clause, —"suffering legal wrong". The second clause would be tautological and repetitious. It would seem reasonable in order to ascribe a meaning to every part of the subsection, to assume that the words "adversely affect or aggrieve" mean something in addition to "suffering legal wrong".

We are not without guidance in this matter. In Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 642, 60 S.Ct. 693, 698, 84 L.Ed. 1037 a rival radio station sought to challenge an order of the Federal Communications Commission granting a competitor's application for a construction permit to erect a broadcasting station. The right of the petitioner to bring the proceeding was questioned. The Supreme Court referred to section 402(b) of the Federal Communications Act, U.S.Code, Annotated, Title 47, § 402(b), which authorizes an appeal to the Court of Appeals for the District of Columbia by an applicant for a license or permit or "by any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application". The conclusion was reached that the competitor had the requisite standing to appeal from the decision of the Commission and to raise any relevant question of law in respect to the order of the Commission.

It will be observed that the phraseology of the pertinent provisions of the Administrative Procedure Act and of the Federal Communications Act are practically identical. The Administrative Procedure Act uses the words, "Any person * * * *adversely affected or aggrieved*". The Federal Communications Act uses the words "any other person who is *aggrieved* or whose interests are *adversely affected*". If

a competitor who fears adverse economic effects, has a right to challenge the legality of official action under one of the Acts, the conclusion is inescapable that he may do so under the other Act.

It is important to observe in this connection that section 605(c) of the Merchant Marine Act provides that in certain contingencies a public hearing must be held by the Commission, notice of which is to be given to each line serving the route. In other words, the Congress felt that under certain circumstances a competitor should have a right to be heard on the question whether a subsidy should be granted to a rival line.

■ Before closing the discussion of this aspect of the litigation, it would seem pertinent to advert to the fact that the Administrative Procedure Act is no mere codification of pre-existing law. If that were all that was accomplished by the enactment of this far-reaching statute, the prodigious labor that had been put into it, would have gone for naught. Contemporary discussion and debate clearly demonstrate that one of the main objectives of the Administrative Procedure Act was to extend the right of judicial review. One of its purposes was to enlarge the authority of the courts to check illegal and arbitrary administrative action. The courts stand between the citizen and administrative officers. The statute created no new remedies but contemplated the use of established types of proceedings to achieve its ends. On the other hand, it broadened the scope of judicial review and it enlarged the class of persons who were given standing to invoke the judicial process. The doctrine of Alabama Power Co. v. Ickes, supra, is not applicable to proceedings under the Administrative Procedure Act. In the light of the foregoing considerations, the conclusion follows that the plaintiff has a standing to maintain this action.

We now reach the merits. As stated above, the only matter that the court has authority to review in this connection is whether the Board has acted illegally. The court may not consider whether it has exercised its discretion wisely.

It is claimed by the plaintiff that the Board was without power to grant the subsidies in this case without making a finding that it is necessary to enter into a subsidy contract in order to provide adequate service by vessels of United States registry. Whether the Board violated any provision of law in failing to make this finding depends upon the construction of the applicable statute. The pertinent provisions are found in section 605(c), which reads, in part, as follows:

"(c) No contract shall be made under this title with respect to a vessel to be operated on a service, route, or line served by citizens of the United States which would be in addition to the existing service, or services, unless the Commission shall determine after proper hearing of all parties that the service already provided by vessels of United States registry in such service, route, or line is inadequate, and that in the accomplishment of the purposes and policy of this Act additional vessels should be operated thereon; and no contract shall be made with respect to a vessel operated or to be operated in a service, route, or line served by two or more citizens of the United States with vessels of United States registry, if the Commission shall determine the effect of such a contract would be to give undue advantage or be unduly prejudicial, as between citizens of the United States, in the operation of vessels in competitive services, routes, or lines, unless following public hearing, due notice of which shall be given to each line serving the route, the Commission shall find that it is necessary to enter into such contract in order to provide adequate service by vessels of United States registry. * * *"

The foregoing provisions may be analyzed as follows:

1. If a subsidy is to be granted with respect to a vessel which is to be operated on a route served by citizens of the United States and which would be in addition to existing service, the Commission must first determine that the service already provided by vessels of United States registry is inadequate, and that additional vessels should be operated thereon. This requirement has been complied with.

2. No subsidy may be granted with respect to a vessel operated on a route already served by two or more citizens of the United States, with vessels of United States registry, if the Board determines that the effect of such a contract would be to give undue advantage or be unduly prejudicial as between citizens of the United States. In this instance the Commission determined that the effect of the subsidies would not give undue advantage or be unduly prejudicial as between citizens of the United States.

3. If the Board determines that the effect of the proposed contract would be to give undue advantage or be unduly prejudicial as between citizens of the United States, then and only then, a finding by the Board is required to the effect that it is necessary to enter into the contract in order to provide adequate service by vessels of United States registry.

It is obvious that the last requirement does not come into play unless an affirmative finding is first made under the second provision. If a negative finding is made in the second contingency, then the third requirement does not apply. It follows hence that in this instance, a finding by the Board that it is necessary to enter into the proposed contract in order to provide adequate service by vessels of United States registry was not requisite.

It is true that the statute is somewhat involved and obscure, but the foregoing construction emerges from a study of its phraseology. The contention of the plaintiff that a finding of necessity in order to provide adequate service is a condition precedent to granting a loan, is not warranted by what the court deems to be the proper interpretation of the statute. This requirement comes into operation only, as indicated above, if the Board determines that the effect of the proposed contract would be to give undue advantage or be unduly prejudicial as between citizens of the United States.

In view of the foregoing considerations, the court is of the opinion that the Board did not transcend any of the limitations of section 605(c) in granting subsidies to the two defendant steamship lines.

Plaintiff's motion for summary judgment is denied, and defendants' motions for summary judgment are granted.